## ARMOUR & CO. v. BASSEL BROS. *

Circuit Court of Appeals, Fifth Circuit.
December 12, 1927.

No. 5017.

1. **Evidence** ☞588—**In suit for balance due on turkey consignments, jury was not bound to accept grade defendant made basis of settlement in sales accounts.**

In suit to recover balance alleged to be due on consignments of turkeys, sold for plaintiffs by defendant on commission basis, in which defendant claimed it had accounted, jury was not obliged to accept grade and quality of turkeys which defendant made basis of settlement in its sales accounts, where there was conflicting evidence on question.

2. **Factors** ☞42—**In suit for balance due on turkeys defendant sold for plaintiff on commission basis, defendant claiming it had accounted, evidence held for jury.**

In suit to recover balance alleged to be due on consignments of turkeys sold by defendant for plaintiffs on commission basis, in which defendant claimed it had accounted, and plaintiffs claimed defendant either failed to account for sales prices received, or failed to exercise due diligence to make sales at best prices obtainable, evidence *held* for jury.

3. **Evidence** ☞543(4)—**Witness held competent to testify regarding prices for turkeys in suit for balance due on consignments of turkeys.**

Where it appeared that witness had had large experience over many years, and was familiar with both wholesale and retail prices and with methods prevailing where sales were made, he was competent to testify that turkeys of highest grade were usually sold in carload lots at same price, and that sales to retail trade should average two to five cents per pound more than sales in carload lots.

In Error to the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Action by Bassel Bros., a copartnership composed of Neal Bassel and others, against Armour & Co. Judgment for plaintiffs, and defendant brings error. Affirmed.

Alfred McKnight and Mark McMahon, both of Fort Worth, Tex., and Walter C.

*Rehearing denied January 7, 1928.

Kirk, of Chicago, Ill. (Cantey, Hanger & McMahon, of Fort Worth, Tex., on the brief), for plaintiff in error.

James B. Hubbard and A. L. Curtis, both of Fort Worth, Tex. (Tyler & Hubbard, of Fort Worth, Tex., on the brief), for defendants in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Bassel Bros. brought this suit against Armour & Co. to recover a balance alleged to be due on two general consignments of dressed turkeys in 1922, one of 17 carloads for the Thanksgiving trade, and the other of 62 carloads for the Christmas trade. The contract under which the shipments were made provided that plaintiffs would purchase and assemble turkeys at various shipping points in Texas, where they would be examined and graded by defendant's inspectors, and if accepted by them would be shipped and sold by defendant to the retail trade at the best obtainable prices, for which it would receive a commission of 5 per cent. on the gross sales. Upon acceptance of shipments by defendant's inspectors, plaintiffs were authorized to make drafts on defendant for a stated percentage of the estimated value.

At the trial plaintiffs withdrew their claim as to one carload consigned for the Thanksgiving trade, and as to 16 carloads consigned for the Christmas trade, for the reason that defendant claimed that delay and consequent damage in transit had been caused by the carriers. Plaintiffs also, for the purposes of this suit, treated as paid on account, and therefore did not seek to recover, the sum of $51,000 represented by their drafts on defendant. In a separate suit the Belton National Bank recovered judgment as purchaser of these drafts, and that judgment has this day been affirmed. Armour & Co. v. Belton Nat. Bank, 22 F.(2d) 727. After eliminating the 17 carloads claimed to have been received by defendant in bad condition, and the amount represented by the drafts held by the Belton National Bank, the plaintiffs recovered judgment for $52,465.31 in this case.

The consignments in question here were received in good condition. It is the contention of plaintiffs that defendant either failed to account for the sale prices it actually received, or that it failed to exercise due diligence to make sales at the best prices obtainable. On the other hand, defendant contends that it made returns upon the basis

of actual receipts, and that it is not chargeable with negligence in failing to make sales at prices higher than were received by it. There was no evidence tending to impeach the correctness of defendant's accounts of sales, except that defendant, through the managers of its various branch offices, failed or refused to so itemize the accounts as to show the names of purchasers and the amounts received from each of them in response to oral requests and questions contained in depositions taken on behalf of plaintiffs. But there was direct evidence to sustain the contention of plaintiffs to the effect that the turkeys were not sold for the highest prices obtainable for the various grades shown by the evidence of shippers, as well as by the reports of defendant's inspectors at the shipping points, and that sales, in the exercise of due diligence, could have been made at more favorable prices. Plaintiffs did not themselves inspect the turkeys at the shipping points, but accepted and made payments to the persons from whom they bought in reliance upon the reports of defendant's inspectors as to grade and quality.

[1, 2] Evidence adduced by defendant was to the effect that the grade and quality of the turkeys at destination points were lower than they were represented to be at the shipping points. There was thus a disagreement as to quality and value between defendant's own agents. It is apparent from the verdict that the jury accepted the value and quality represented by defendant's inspectors in Texas, and, that being so, much of the dispute as to values becomes unimportant. Clearly, the jury was not obliged to accept the grade and quality which defendant made the basis of settlement in its sales accounts. The evidence of plaintiffs would have sustained a somewhat larger verdict than was obtained. Therefore it was not error, as contended, to deny defendant's motion for a directed verdict in its favor.

[3] The only other matter assigned as error is that the trial court permitted the witness Emerson to testify that all turkeys of the highest grade were usually sold in carload lots at the same price, and that sales to the retail trade should average from two to five cents per pound more than sales in carload lots. The ground of the objection to this testimony was that Emerson was an incompetent witness, because he testified only to his individual sales, and was unacquainted with retail market conditions in New York, where a large proportion of the sales were made. We do not think the objection is

good, because it appears that Emerson had had large experience, extending over many years, and apparently was familiar with both wholesale and retail prices, and with the methods and customs prevailing in New York in the making of such sales as are here involved.

Reversible error is not made to appear by any of the assignments, and the judgment is affirmed.